[No. 8672. Department Two. June 3, 1910.]

E. M. GORDON, *Respondent*, v. G. B. GILLESPIE, *Appellant.*[1]

CONTRACTS—BUILDING CONTRACTS — CONSTRUCTION — INDEMNITY — BREACH OF CONTRACT—ACTIONS—ACCRUAL. A contract whereby defendant was to furnish all labor and material to completely finish the painting, tinting, and staining of a building, for a consideration of so much per hour for his own labor and his workmen, and actual cost of material, etc., to be advanced by the plaintiff, "guaranteeing and agreeing" that the total cost should not exceed $1,500, is one to fully perform for the sum of $1,500 or less, and not merely a contract of indemnity; and the owner's right of action to recover as damages the difference between the contract price and his actual cost in completing the work accrues as soon as the contract is breached.

ATTACHMENT—GROUNDS—DISSOLUTION—EVIDENCE—SUFFICIENCY. It is not an abuse of discretion to refuse to dissolve an attachment sought on the ground that defendant was guilty of a fraud in entering into a contract whereby he was to finish a house, and that defendant was about to dispose of his property, where the evidence tended to show that materials not used were charged against the owner, that he misappropriated funds supplied to pay labor claims, and was attempting to dispose of his property, and it appears that the attached property might have been squandered and dissipated.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 8, 1909 upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Chas. E. McAvoy* and *Jno. Trumbull*, for appellant.

*Byers & Byers*, for respondent.

[1]Reported in 109 Pac. 109.

RUDKIN, C. J.—On the 27th day of August, 1908, the parties to this action entered into the following written contract:

"Agreement, made and entered into this 27th day of August, 1908, by and between E. M. Gordon, party of the first part, and G. B. Gillespie, party of the second part, all of Seattle, King county, Washington, Witnesseth:

"(1)   The party of the second part agrees, for the consideration hereinafter mentioned, to furnish all labor and material and to completely finish all of the painting, varnishing, tinting and staining which enters into the construction of the three story and basement brick apartment building situated upon the southeast corner of Harrison Street and Queen Anne Avenue in the City of Seattle, Washington.

"(2)   The party of the second part further agrees to furnish all equipments, scaffolds, ladders, falls, canvas, clothes, etc. necessary for the completion of this work without cost to the party of the first part, and to carry out and complete the work before mentioned for the consideration of seventy-five (75) cents per hour for actual time spent by him overseeing and directing said work, further he is to receive the sum of four (4) dollars and fifty (50) cents per day from the party of the first part for the mechanics employed by him to execute said work, and also the actual cost of the material purchased and used for said painting, the party of the second part furnishing vouchers and pay rolls showing the actual cost of this work; the party of the second part guaranteeing to completely finish all said painting, varnishing, tinting and staining in a thoroughly first-class workmanlike manner under the direction and to the satisfaction of W. P. White, Architect, and according to the requirements of the plans and specification prepared by said architect for said building, receiving therefor the actual cost of material, four dollars and fifty cents per day for the men employed, and seventy-five cents per hour for the actual time spent by him in overseeing said work as before mentioned; the second party guaranteeing and agreeing that the cost of said painting shall not exceed the sum of One Thousand Five Hundred ($1,500) Dollars.

"(3)   The party of the first part agrees, in consideration of the conditions and obligations herein mentioned being per-

formed and carried out, to pay the consideration hereinbefore mentioned in installments as follows:

"As work progresses sufficient money shall be advanced on each alternate Saturday to pay the wages of the men employed, bills for material purchased after being OK'd as correct by the party of the second part shall be delivered to first party who shall settle same directly with the firms furnishing said material; the seventy-five (75) cents per hour mentioned to be paid second party being retained until the completion of the work covered by the contract when it also shall be paid to second party, provided the total amounts so paid does not exceed the guaranteed cost limit of One Thousand Five Hundred Dollars.

"(4) It is further agreed that in the event of additional work being performed by second party as result of mutual agreement that the cost limit herein mentioned shall be increased or decreased a reasonable amount by reason of such changes, the party of the first part paying for additional work, if ordered by him, at the rates herein mentioned."

Soon after the execution of the contract the defendant Gillespie employed laborers, purchased materials, and entered upon the performance of the contract, but later and during the latter part of the month of December, 1908, he utterly failed and neglected to oversee or direct the work and practically abandoned the contract, so that the plaintiff, Gordon, was compelled to, and did, take charge of the work himself. Extra work was performed under the contract to the value of $133.50, and the plaintiff paid out and incurred obligations to the amount of $1,939.79 in completing the contract according to its terms, and for extras, or the sum of $306.79 in excess of the cost of the extras, and the $1,500 for which the defendant agreed or guaranteed to complete the contract. This action was instituted to recover from the defendant the excess over and above the contract price and the cost of the extras, and from a judgment in favor of the plaintiff, this appeal is prosecuted.

It appears, without apparent contradiction, that the respondent paid out and incurred obligations to the amount of the judgment in the completion of the contract, over and

above the contract price, and it likewise appears that a considerable portion of this sum was paid after the institution of this suit. The principal contention of appellant arises out of what we consider a misconstruction of the contract. He assumes that his promise or guaranty that the total cost of the work specified in the contract should not exceed the sum of $1,500, was a mere contract of indemnity, and that no right of action would accrue in favor of the respondent for its breach until sums in excess of the $1,500 had actually been paid. But as we view the contract, the appellant agreed to fully perform the contract for the sum of $1,500, or less in the event the cost of materials, labor and supervision did not equal that sum, and the respondent would have the same remedy for a breach of such a contract as for the breach of any other building contract. The right of action accrued to the respondent as soon as the contract was breached, and his measure of damages was the difference between the contract price and the actual cost of completing the work. Such was the construction placed upon the contract by the court below, and in that construction we fully concur. This also disposes of the claim that the indemnity contract was without consideration.

A writ of attachment was sued out at the commencement of the action, and a motion thereafter interposed to dissolve the attachment was denied. This ruling is assigned as error. Fraud in contracting the debt, and that the appellant was about to dispose of his property for the purpose of placing it beyond the reach of his creditors, was the basis of the attachment. The affidavits read on the hearing of the motion to dissolve tended to show that materials not used in the performance of the contract were charged up against the building, at the instance of the appellant, that he misappropriated funds paid to him by the respondent for the purpose of paying labor claims, and that he was attempting to dispose of his property. It may be that the excessive charge for materials and the misappropriation of funds did not constitute

fraud "in contracting the debt," within the meaning of the attachment statute; but, however that may be, these were circumstances the court had a right to take into consideration in determining the other question, and we are not prepared to say that the court erred in its conclusion that the attached property would have been dissipated and squandered in fraud of the rights of creditors had no attachment issued.

The judgment and order are therefore affirmed.

MOUNT, PARKER, DUNBAR, and CROW, JJ., concur.